UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LORNA HENDERSON,

        Plaintiff,

v.                              Case No. 8:19-cv-2454-T-AEP

ANDREW M. SAUL,
Commissioner of Social Security,

        Defendant.

_____/

## ORDER

Plaintiff seeks judicial review of the denial of her claim for a period of disability and disability insurance benefits ("DIB"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

**I.**

### A.  Procedural Background

Plaintiff filed an application for DIB on November 13, 2014, alleging disability beginning on April 17, 2014 (Tr. 348-49). The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration (Tr. 94-104; 140-47). Plaintiff then requested an administrative hearing (Tr. 149-50). Per Plaintiff's request, the ALJ held an initial hearing and a supplemental hearing where Plaintiff appeared and testified (Tr. 190-218; 229-60). Following the hearings, the ALJ issued an unfavorable decision finding Plaintiff not

disabled and accordingly denied Plaintiff's claims for benefits (Tr. 106-26). Subsequently, Plaintiff requested review from the Appeals Council (Tr. 266-68). The Appeals Council remanded the case for further proceedings on August 7, 2018 (Tr. 127-31). Another hearing was held before the ALJ (Tr. 300-34). Following the hearing, the ALJ issued an unfavorable decision (Tr. 12-36). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-6). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

### B.      Factual Background and the ALJ's Decision

Plaintiff, who was born in 1964, claimed disability beginning on April 17, 2014 (Tr. 15). Plaintiff obtained a high school education (Tr. 27). Plaintiff's past relevant work experience included work as a nurse assistant (DOT No. 355.674-014) (Tr. 27). Plaintiff alleged disability due to spine and back issues, obesity, wrist issues, knee issues, history of bariatric surgery, bilateral ganglion cysts, and headaches (Tr. 18).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2018 and had not engaged in substantial gainful activity since April 17, 2014, the alleged onset date (Tr. 18). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: degenerative disc disease, cervical spine status post anterior cervical discectomy; degenerative disc disease, lumbar spine; and obesity (Tr. 18). The ALJ found that Plaintiff had non-

severe impairments that included bilateral carpal tunnel syndrome of her wrists, bilateral ganglion cysts of her wrists, DeQuervian's syndrome of her left wrist and thumb and left wrist triangular fibrocartilage complex tear (Tr. 18). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 20). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b) with the following limitations:

> "The claimant can lift and carry 20 pounds occasionally, and ten pounds frequently; can stand and walk six (6) hours out of an eight-hour workday, and sit six (6) hours out of an eight-hour workday. The claimant may use a cane for ambulation. The claimant can occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; and can occasionally balance, stoop, kneel, crouch, or crawl. The claimant can only occasionally reach overhead with the bilateral upper extremities, and can frequently reach in other directions, handle, finger, and feel with the bilateral upper extremities. The claimant can never push or pull with the bilateral upper extremities. The claimant should avoid concentrated exposure to temperature extremes and vibration, and avoid all exposure to hazards."

(Tr. 21). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 24).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform her past relevant work (Tr. 27).  Given Plaintiff's background and RFC, the VE testified that Plaintiff could have performed other jobs existing in significant numbers in the national economy, such as a ticket taker (DOT No. 344.667-010), toll collector (DOT No. 211.462-038), and survey worker (DOT No. 205.367-054) (Tr. 28).  Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 28-29).

## II.

To be entitled to benefits, a claimant must be disabled, meaning the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  "[A] physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. § 404.1520.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. § 404.1520(a).

Under this process, the ALJ must determine, in sequence, the following:  whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work.  20 C.F.R. § 404.1520(a)(4).  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience.  20 C.F.R. § 404.1520(a)(4)(v).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. § 405(g).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

### III.

Plaintiff argues that the ALJ erred by not considering all of Plaintiff's limitations in making Plaintiff's RFC determination and by not giving proper consideration to certain opinion evidence. For the following reasons, the ALJ applied the correct legal standards and the ALJ's decision is supported by substantial evidence.

#### 1. The ALJ's RFC determination is supported by substantial evidence

Plaintiff first contends that the ALJ's RFC determination is not supported by substantial evidence because while the ALJ found Plaintiff capable of performing light work, Plaintiff contends she is only capable of performing sedentary work. However, substantial evidence supports the ALJ's finding that Plaintiff is capable

of performing light work with a limitation ofstanding and walking for six hours per day.

A RFC is defined as the most Plaintiff can still do despite her limitations and is based on an evaluation of all the relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1) and (a)(3); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184. At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. §§ 404.1546(c); *see also* 20 C.F.R. §§ 404.1527(d)(2) (stating that the assessment of a claimant's RFC is an issue reserved for the Commissioner). The task of determining a claimant's RFC and ability to work thus rests with the ALJ, not a medical source. *See Moore v. Soc. Sec. Admin., Com'r*, 649 F. App'x 941, 945 (11th Cir. 2016); *Castle v. Colvin*, 557 F. App'x 849, 853 (11th Cir. 2014) ("Contrary to the district court's reasoning, the ALJ did not 'play doctor' in assessing Mr. Castle's RFC, but instead properly carried out his regulatory role as an adjudicator responsible for assessing Mr. Castle's RFC … Indeed, the pertinent regulations state that the ALJ has the responsibility for determining a claimant's RFC"); *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) ("We note that the task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors").

Plaintiff contends that the ALJ erred in finding that Plaintiff's cervical condition, including the problems that she was having with using her hands and arms, improved after her cervical surgery and that by October 2015 she was "neurologically intact" and responded well to surgical intervention (Doc. 22, Pg.

21; Tr. 23-24).  Plaintiff points to numerous instances in the record where Plaintiff purportedly maintained that her cervical spine condition and hand problems did not improve post-surgery, and also cites to instances where Dr. Zhu and Dr. Medina noted that her right hand was swollen (Doc. 22, Pg. 21; Tr. 698, 710, 716, 744-45, 751-52, 757-58, 765-66, 794-95, 799-800, 802-03).    However, after closer examination of these records as they pertain to Plaintiff's cervical spine condition, they merely indicate that Plaintiff had moderate tenderness in her spine while maintaining normal muscle limits and normal range of motion (Tr. 698, 710, 716, 744-45, 751-52, 757-58, 765-66, 794-95, 799-800, 802-03).  Further, the records provide no detail about Plaintiff's wrist but merely state "swelling right wrist."  In contrast, the ALJ observed that just four days following the cervical procedure, Dr. Rak reported that "[t]he surgery went extremely well" and "[Plaintiff's] symptoms of headaches and neck pain and shoulder pain are completely resolved" (Tr. 686). The ALJ also relied on the records cited by Plaintiff, where it was noted that Plaintiff maintained normal muscle limits and a normal range of motion (Tr. 23, 698, 710, 716, 744-45, 751-52, 757-58, 765-66, 794-95, 799-800, 802-03).  Therefore, the undersigned does not find Plaintiff's argument persuasive.

The ALJ fully reviewed the evidence of record and provided substantial evidence to support her RFC evaluation when she found that Dr. Amusa's opinion, Plaintiff's relatively mild objective medical evidence, Dr. Basnayke's consultative examination and opinion, and parts of Dr. Medina's treating opinion supported a finding that Plaintiff could perform light work limiting her to postural activities and

allowed for the use of a cane to ambulate (Tr. 21-27).  Dr. Amusa testified at the August 23, 2017 hearing after review of the medical evidence of record (Tr. 45-55). The ALJ assigned great weight to Dr. Amusa's expert testimony (Tr. 25).  Medical experts are highly qualified and their opinions may be entitled to great weight.  *See* 20 C.F.R. § 404.1527(c); *Crawford*, 363 F.3d at 1159-60.  Dr. Amusa, who is board certified in internal medicine, testified that based on his review of the medical records, it was reasonable that Plaintiff could lift no greater than 20 pounds occasionally and 10 pounds frequently, stand/walk and sit for 6 hours in an 8-hour day, never climb ladders, ropes, or scaffolds, perform all other postural movements occasionally, and needed to avoid unprotected heights (Tr. 50).   The ALJ considered this opinion and found it well supported and consistent with the record evidence (Tr. 25); *See Huntley v. Comm'r of Soc. Sec.*, 683 F. App'x 830, 833 (11th Cir. 2017) (holding that substantial evidence supports the ALJ's decision to assign the most weight to the opinion of a non-examining physician because the non-examining physician "explained his conclusion … with specific reasons, and his opinion was consistent with the treatment records").

### a. Use of hands

Plaintiff next contends that the ALJ failed to properly assess Plaintiff's ability to use her hands and that she is only able to use her hands for handling and grasping "occasionally" (Doc. 22, Pg. 20).   The VE testified at the December 18, 2018 hearing that the jobs he cited that Plaintiff could perform all require frequent to

constant handling/grasping and that such jobs could not be performed by Plaintiff if it was determined that she could only grasp and handle on an occasional basis (Doc. 22, Pg. 20; Tr. 1162).   However, the ALJ found that Plaintiff can handle, grasp, and finger on a "frequent" basis (Tr. 21, 26).   After reviewing the record, the undersigned finds that the ALJ's determination is supported by substantial evidence.

Namely, the ALJ, after fully considering the evidence related to Plaintiff's ability to use her hands and wrists, found that Plaintiff's diagnosis of bilateral carpal tunnel syndrome, tenosynovitis of the left wrist and thumb, left wrist triangular fibrocartilage complex ("TFCC") tear, and bilateral ganglion cysts was non-severe (Tr. 18-19).   As such, the ALJ found that Plaintiff could frequently handle, finger, and feel (Tr. 19, 22-26).   In making this determination, the ALJ recognized that Plaintiff has reduced grip strength in her right wrist but found that Plaintiff had full range of motion and full grip strength in her left wrist (Tr. 19).   The ALJ further stated that in recognizing that such conditions result in more than minimal limitations on Plaintiff's ability to perform work activity, the restrictions in place concerning Plaintiff's ability to reach, handle, finger, feel, push, pull, lift, and carry as attributed to her cervical degenerative disc disease are sufficient to address Plaintiff's reasonable complaints concerning her hand and wrist conditions (Tr. 25).

The ALJ relied in-part on Plaintiff's statement in her 2014 function report that she did not have any difficulty using her hands in finding that the diagnosis of bilateral carpal tunnel syndrome, tenosynovitis of the left wrist and thumb, left wrist

TFCC tear, and bilateral ganglion cysts did not cause Plaintiff more than minimal limitations in her ability to perform basic work activity after the alleged onset date (Tr. 19).   In support of her argument, Plaintiff points to Dr. Medina's opinion wherein Dr. Medina opined that Plaintiff can perform only occasional handling with her left and right hand (Tr. 787).   While true, in that opinion Dr. Medina also opined that Plaintiff could frequently finger, feel, and reach in both hands.   In contrast to Dr. Medina's opinion, Dr. Basnayke noted that Plaintiff's hand and finger dexterity were intact with normal grip strength and the ability to zip, button, and tie (Tr. 635).   While Plaintiff occasionally demonstrated reduced grip strength, the ALJ noted that Dr. Basnayke reported that Plaintiff had full range of motion and full grip strength in her left wrist (Tr. 19, 635).

The ALJ further noted that following Plaintiff's cervical surgery, Dr. Zhu and Dr. Medina both consistently documented normal findings in Plaintiff's wrist, which included normal strength and motor function in all her extremities (Tr. 19, 639, 647, 698, 702, 710, 716, 734, 744-45, 751-52, 757-58, 765-66, 794-95, 799-800, 802-03, 841-42, 850-51, 872-73, 879-80, 886-88, 892-94, 899-901, 906-07, 915-17, 930-31, 936-38, 953-55, 959-60).   The ALJ noted that Plaintiff's records both before and after her cervical surgery did not support greater limitations, including Plaintiff's admission from this period that she did not have any limitations in her hand/wrist (Tr. 19).   Thus, substantial evidence in the record supports the ALJ's determination.

### b. Cane

Plaintiff also contends that the RFC does not assess when Plaintiff needed to use her cane (Doc. 22 at Pg. 22).  Plaintiff states that the RFC merely states that Plaintiff "may use a cane for ambulation" when in fact she needs her cane for prolonged standing as well as for ambulation due to balance issues and weakness. This argument fails, as the record contains substantial evidence relied upon by the ALJ to support the ALJ's assessment of Plaintiff's subjective allegations and RFC.

In finding that Plaintiff required a cane for ambulation, the ALJ noted that while Plaintiff's medical evidence consistently documented normal gait, Plaintiff did allege that she occasionally used a cane for ambulation (Tr. 24).  The ALJ also recognized the fact that Dr. Medina-Sanchez prescribed Plaintiff a one-point cane in October 2018 (Tr. 24).  Specifically, the ALJ stated that:

> [a]lthough the medical evidence of record is not strong concerning the medical necessity for a cane, the [ALJ] accepts the claimant's testimony that she occasionally uses a cane for ambulation, and has provided for the claimant to use a cane for ambulation as part of the claimant's maximum residual functional capacity during the entire period at issue

(Tr. 24).  In contrast, Dr. Amusa, who testified at the August 23, 2017 hearing, reviewed the medical evidence of record and testified that the medical evidence did not support the need for an assistive device (Tr. 45-55).  The ALJ still incorporated Plaintiff's use of a cane into the RFC as consistent with Plaintiff's own testimony (Tr. 25).

Despite this, the ALJ recognized that while Plaintiff can ambulate without a cane, she can ambulate more effectively with a cane (Tr. 25).  The ALJ recognized

that both Dr. Zhu and Dr. Medina's treatment records consistently noted that Plaintiff had the ability to stand without difficulty (Tr. 23, 639, 647, 698, 702, 710, 716, 734, 744-45, 751-52, 757-58, 765-66, 794-95, 802-03). These records repeatedly note that Plaintiff has normal gait and the ability to stand without difficulty. The record also indicates that Plaintiff was able to rise from her chair without difficulty and needed no help changing for the examination or getting on and off the examination table (Tr. 23). Moreover, the VE testified that the light jobs that he cited were "station jobs," meaning that the jobs are stationary in that they allow for a person to use a cane for ambulation without the loss of production (Tr. 1159). To the extent that Plaintiff needs to use a cane during the workday, the jobs provided by the VE allow for Plaintiff to do so.

Plaintiff also attempts to rely on SSR 96-9p as grounds for a remand (Doc. 22, Pg. 23). SSR 96-9p states that when it is found that a hand-held assistive device (such as a cane) is medically required to aid in walking or standing, there must be medical documentation establishing the need for such device and describing the circumstances for which it is needed (i.e. all the time, periodically, or any other relevant information). SSR 96-9p, 1996 WL 374185 (July 2, 1996). Here, it appears that the ALJ complied with SSR 96-9p, as the ALJ provided that Plaintiff is to use a cane during the "entire period at issue."

To the extent this is insufficient to comply with SSR 96-9p, such mistake on the part of the ALJ would merely be harmless error and not warranting of a remand, since there is no prejudice in not remanding for further opinion. There is no harm

13

to Plaintiff and no reversible error by the ALJ, since the ALJ's finding is supported by substantial evidence.

Plaintiff also points to her visit with Dr. Basnayke's where he stated that Plaintiff "looses balance," "[c]an walk on heels and toes with difficulty," and that an "[a]ssistive device is medically necessary" (Doc. 22 at Pg. 32; Tr. 633-35). Despite this, he also stated that Plaintiff is able to walk slowly without a cane, is able to walk fast when using the cane, and is able to rise from a chair without difficulty (Tr. 635). Aside from this opinion, the record otherwise demonstrates that Plaintiff is able to ambulate without the use of a cane. For example, Plaintiff testified that she only used a cane when walking long distances and that she did not need a cane for short distance "stuff" but rather, only "prolonged distances" (Tr. 1153, 1155). Plaintiff's admission that she only requires a cane for long distances is inconsistent with her contention that her use of a cane is necessary for standing. *See Clyburn v. Comm'r of Soc. Sec.*, 555 F. App'x 892, 894 (11th Cir. 2014) (finding that the ALJ properly relied on the claimant's admissions that were inconsistent with her claims).

For these reasons, substantial evidence supports the finding that the ALJ adequately considered Plaintiff's need for use of a cane. The ALJ provided that Plaintiff may use a cane for ambulation and the VE provided jobs that Plaintiff can perform with a cane. Since this Court's role is not to reweigh the evidence but rather, is to determine whether the ALJ's decision is supported by substantial evidence, the undersigned will not disturb the decision of the ALJ.

### 2. The ALJ properly considered the opinion evidence

Plaintiff contends that the ALJ did not properly consider the opinion evidence (Doc. 22, Pg. 33).  Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, what the claimant can still do despite the impairments, and physical or mental restrictions.  20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1).  When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citation omitted).  The Social Security regulations provide guidelines for the ALJ to employ when evaluating medical opinion evidence.  *See* 20 C.F.R. §§ 404.1527, 416.927.

In determining the weight to afford a medical opinion, the ALJ considers a variety of factors including but not limited to the examining relationship, the treatment relationship, whether an opinion is well-supported, whether an opinion is consistent with the record as a whole, and the area of the doctor's specialization. 20 C.F.R. §§ 404.1527(c), 416.927(c).  For instance, the more a medical source presents evidence to support an opinion, such as medical signs and laboratory findings, the more weight that medical opinion will receive.  20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).  Further, the more consistent the medical opinion is with the record as a whole, the more weight that opinion will receive.  20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).  Typically, the ALJ must afford the testimony of a

treating physician substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (*per curiam*) (citation omitted).   Good cause exists where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records.   *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).   In fact, the ALJ may reject any opinion when the evidence supports a contrary conclusion.   *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*).   A reviewing court will not second guess an ALJ's decision regarding the weight to afford a medical opinion, however, so long as the ALJ articulates a specific justification for the decision.   *See Hunter v. Soc. Sec. Admin. Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015).

### a.  Dr. Amusa

Plaintiff contends that the ALJ erred in giving great weight to the opinion of Dr. Kweli Amusa, a non-examining social security medical consultant who testified at the August 23, 2017 hearing (Tr. 25, 37-60).   Specifically, Plaintiff's contends that the ALJ's reliance was error because Dr. Amusa's opinion was based on an incomplete record that, following Dr. Amusa's opinion, was supplemented with medical records from Dr. Rak (Tr. 662-89), from Huntington Medical Group (Tr. 690-771), and from Dr. Zhu and Dr. Medina (Tr. 690-771, 785-1147).   However, as correctly cited by Defendant, this is not error.   While Dr. Amusa may not have

reviewed <u>all</u> of the evidence, the ALJ did (Tr. 22-27); *See* 20 C.F.R. § 404.1527(c)(3), (4); *Stultz v. Comm'r of Soc. Sec.*, 628 F. App'x 665, 669 (11th Cir. 2015) (holding that the ALJ properly granted weight to the opinions of medical experts even though the experts did not review the most recent medical records). Even if the state agency medical consultant cannot review all of the claimant's medical records before rendering an opinion or offering a RFC assessment, the ALJ has access to the entire record, including the claimant's testimony, and can determine whether the opinion is supported by and consistent with the evidence of record and thus, whether to afford the opinion great weight. *See Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 807 (11th Cir. 2013) (finding that an ALJ did not afford undue weight to a non-examining doctor where the doctor cited several portions of the record in support of her conclusions, and the ALJ, who makes the ultimate determination, had access to the entire record, including the claimant's testimony). As previously stated, the ALJ properly considered and gave great weight to Dr. Amusa's expert testimony, which provides substantial evidence supporting the ALJ's RFC finding.

### b. Dr. Medina

Plaintiff next contends that the ALJ erred in not giving substantial weight to Dr. Medina's medical opinion (Doc. 22, Pgs. 35-38). In arguing that the ALJ erred in not giving Dr. Medina's opinion substantial weight, Plaintiff argues that the ALJ failed to consider a functional capacity evaluation report ordered by Dr. Medina but

performed by a different doctor (Doc. 22, Pgs. 36-37; Tr. 1007-1026). In response, the Commissioner argues that the ALJ fully considered Dr. Medina's opinion and provided good reasons supported by substantial evidence for granting it partial weight (Doc. 22, Pg. 40). For the reasons that follow, substantial evidence supports the ALJ's decision to grant partial weight to Dr. Medina's opinion.

Dr. Medina opined that Plaintiff could occasionally lift and carry up to 20 pounds, and frequently lift and carry less than 10 pounds, and could frequently balance, but never climb, crouch, crawl, kneel, or stoop (Tr. 26, 786). He further indicated that Plaintiff could occasionally reach overhead and finger bilaterally, and could frequently reach in other directions, finger, and feel bilaterally (Tr. 787). He indicated that Plaintiff could sit for less than an hour total and stand and/or walk for one-hour total in a workday, with the ability to alternate between standing and sitting (Tr. 787). He also stated that Plaintiff would need unscheduled breaks and would be unexpectedly absent at least two days per month (787-88). While the ALJ adopted several of Dr. Medina's recommendations, the ALJ found that found that Dr. Medina's opinion regarding Plaintiff's need for a sit/stand option and the allowance for off-task behavior and absenteeism were not entirely consistent with Plaintiff's treatment records, including Dr. Medina's own finding that primarily focused on Plaintiff's cervical condition and consistently documented that Plaintiff had a normal gait and was neurologically intact (Tr. 26).

Plaintiff's medical records, as discussed at length in other sections of this Order, provide substantial evidence for affording Dr. Medina's opinion little weight.

For example, as already stated, the ALJ noted that Dr. Zhu and Dr. Medina's treatment records repeatedly revealed that Plaintiff had normal range of motion, normal muscle strength, normal muscle tone, normal extremity strength, normal motor function, a normal gait, and that Plaintiff could stand without difficulty (Tr. 23, 639, 647, 698, 702, 710, 716, 734, 744-45, 751-52, 757-58, 765-66, 794-95, 799-800, 802-03, 841-42, 850-51, 872-73, 879-80, 886-88, 892-94, 899-901, 906-07, 915-17, 930-31, 936-38, 953-55, 959-60).  The ALJ also observed that Plaintiff reported 60-70% relief after lumbar epidural steroid injections and more than 70% relief following cervical nerve blocks (Tr. 24, 845, 853, 860, 868, 876, 884, 940, 946). These relatively normal findings are inconsistent with some of Dr. Medina's extreme findings, such as his opinion that Plaintiff could sit for less than an hour total and stand and/or walk for one hour total in a workday, with the need to alternate between standing and sitting (Tr. 787).  Here, in concluding that the record supported greater functioning than indicated by Dr. Medina, the ALJ properly considered the record as a whole and properly evaluated Dr. Medina's opinion. Therefore, substantial evidence supports the ALJ's finding.

### c.  ARNP Kozich

Plaintiff further contends that the ALJ erred when she gave ARNP Alexis Kozich's ("Kozich") opinion little weight (Tr. 27).  Kozich opined in an Application for Disabled Person Parking Permit dated August 8, 2018, that Plaintiff was a disabled person with a permanent disability that limits or impairs her ability to walk

more than 200 feet without being able to stop and rest (Tr. 1048).  However, someone who is not an acceptable medical source cannot establish the existence of an impairment.  *Crawford*, 363 F.3d at 1160.  ARNP's do not constitute an "acceptable medical source" under the Regulations, although their opinions may still be used to show the severity of an impairment and how it affects a claimant's ability to work.  20 C.F.R. § 404.1513(a) and (d).

Here, the ALJ was justified in according Kozich's statement very little weight and such decision was not an error (Tr. 27).  First, the ALJ noted that the determination of disability is reserved to the Commissioner (Tr. 27).  Second, the ALJ noted that the assessment was made by a registered nurse, which, as just stated, is not an acceptable medical source under the Act (Tr. 27).  The ALJ further noted that the RFC takes into account Plaintiff's difficulties ambulating by limiting her to light exertional work activity and providing for the use of a cane, which is consistent with Kozich's statement (Tr. 27).  However, the ALJ found that the statement was of little value in determining Plaintiff's specific RFC (Tr. 27).  Since Kozich was not an acceptable medical source, her opinion is not a medical opinion and is not entitled to any special significance or consideration.  *See* 20 C.F.R. §§ 404.1513(a) and (d), 404.1527(a)(2); *Szilvasi v. Comm'r of Soc. Sec.*, 555 F. App'x 898, 901 (11th Cir. 2014) (recognizing that a therapist's opinions are not an acceptable medical source to establish the existence of an impairment, since a therapist is not a physician).  For these reasons, substantial evidence supports the ALJ's decision to assign Kozich's opinion very little weight.

**IV.**

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is AFFIRMED.

2. The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 25th day of March, 2021.

ANTHONY E. PORCELLI
United States Magistrate Judge

cc:  Counsel of Record